UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL GAETA, JR., <br><br> Petitioner, <br><br> v. <br><br> STU SHERMAN, Warden, <br><br> Respondent. | No. 1:15-cv-01770-SKO HC <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEA CORPUS** <br><br> **(Doc. 6)** |

Petitioner, Abel Gaeta, Jr., is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] In his first amended petition, Petitioner presents two grounds for habeas relief: (1) insufficient evidence; and (2) California's felony-murder special circumstance is unconstitutional. Having reviewed the record and applicable law, the Court will deny the petition.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

I. **<u>Procedural and Factual Background[2]</u>**

Petitioner, Milani Calberta Larrea ("Larrea"), and Ronnie D. Fleming ("Fleming") were methamphetamine users. On February 15, 2010, Petitioner was with Fleming when Fleming stole a vehicle. The two took the car to meet up with Larrea.

The following day, Larrea directed Fleming and Petitioner to the trailer home of Wesley Nunley ("Nunley"). Larrea had previously obtained methamphetamine from Nunley. However, the three were not able to obtain methamphetamine on this occasion.[3]

That evening, Petitioner suggested to Fleming that they return to Nunley's home and rob him. On their way, they stopped at a gas station and purchased beer and duct tape. Upon arriving at Nunley's home, there was a light on inside, but no one answered the door. Petitioner and Fleming returned to a house where they were staying with Larrea and all three ingested methamphetamine and stayed up all night.

On the morning of February 17, 2010, Petitioner, Larrea, and Fleming left for Nunley's house once again. Larrea told Fleming to back the car up into the dead-end street behind the home. Petitioner and Larrea approached Nunley's home while Fleming stayed in the car. After some time, Petitioner went back to the car and told Fleming "Nobody's there. Come on." When Fleming entered the home, he noticed the front door was open, Petitioner and Larrea were standing near the doorway, and Nunley was sitting behind a table.

Petitioner punched Nunley in the face and Nunley fought back. Petitioner called for help and Fleming entered the trailer, punched Nunley in the ribs, and placed him in a headlock. While the two were fighting, Petitioner told Larrea to "bring the tape," which she retrieved from the car.

---

[2] The factual and procedural background is taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Larrea, et al.*, (No. F06331) (Cal. Ct. App. Nov. 14, 2014), and review of the record.
[3] The record does not indicate why Petitioner, Larrea, and Fleming were unable to obtain methamphetamine on that day.

2

As Petitioner and Fleming restrained Nunley, Larrea wrapped Nunley's hands behind his back with duct tape and then wrapped his ankles. Petitioner removed Nunley's wallet from his pants and took the $500 and methamphetamine it contained. Next, Petitioner and Fleming dragged Nunley to the back of the trailer and set him on the floor against a wall, lying on his side. Fleming placed a hat over Nunley's face so he could not see.

Items were taken from the home, including a laptop computer, portable DVD player, and an iPod. Larrea remained outside during most of this time and moved Nunley's bicycle to a spot near the car. At some point, Petitioner told Larrea to come inside and take a plastic bin of VHS tapes to the car.

At 8:15 a.m., two of Nunley's relatives drove up to the home to check on him. William Lively ("Lively") got out of his truck, while his wife remained inside the truck. Seeing someone approaching the trailer, Petitioner, Fleming, and Larrea headed back toward their car. Larrea and Fleming got into the car, but Petitioner remained outside, holding a small bat, and yelling at Lively's wife.

Larrea locked the doors of the car to prevent Petitioner from getting in. When Petitioner told Larrea to unlock the car, Larrea suggested he ride the bicycle. Eventually, Larrea unlocked the door, moved to the back seat so Petitioner could get in the front, and Fleming drove off. Upon returning to their house, Petitioner divided the cash, methamphetamine, and items they had stolen.

Police officers arrived at Nunley's home around 9:00 a.m. and found him lying on his side on the floor with a hat covering his face. His hands and feet were bound by duct tape. Nunley showed no signs of life, and emergency personnel pronounced him dead at 9:15 a.m. The front pockets of Nunley's pants were inside out. More than six feet of tape encircled Nunley's ankles and more than 16 feet of tape encircled his wrists.

3

An autopsy of Nunley revealed lacerations and abrasions to his face and head, consistent with being punched, and hemorrhaging to his face and head, consistent with being in a headlock. Nunley was determined to have suffered from coronary artery disease and congested lungs, and had a moderate amount of methamphetamine in his bloodstream. The forensic pathologist concluded that Nunley's death was a homicide caused by "positional asphyxia associated with [ ] blunt-force trauma and the extremity binding, along with the contributory factor of the methamphetamine intoxication."

Larrea's fingerprints were found on a cup near the stolen bicycle; her DNA was found on the plastic wrapping from a roll of duct tape inside the trailer. Petitioner's DNA was found on a strip of duct tape stuck to a dresser.

A jury found Petitioner guilty of murder (Cal. Penal Code § 187) and robbery (Cal. Penal Code §212.5(a)). The jury found true the special circumstance that the murder was committed during the commission of a robbery (Cal. Penal Code §190.2(a)(17)(A)). Petitioner was sentenced to life without the possibility of parole on the murder charge and six years for the robbery charge, which was stayed (Cal. Penal Code § 654).

On November 14, 2014, the California Court of Appeal for the Fifth Appellate District affirmed Petitioner's conviction. On February 11, 2015, the California Supreme Court denied Petitioner's Petition for Review.

On December 23, 2015, Petitioner filed his first amended petition for writ of habeas corpus before this Court. Respondent filed a response on March 18, 2016, and Petitioner filed a reply on May 11, 2016.

## II. **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the

United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited

clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claim.

In his first ground for habeas relief, Petitioner alleges the evidence adduced at trial was insufficient to support his murder conviction. (Doc. 6 at 17.) Specifically, Petitioner contends that there was insufficient evidence to show that Petitioner's actions were a substantial factor in causing Nunley's death. *Id*. Respondent counters that the Court of Appeal's rejection of Petitioner's claim was reasonable because there was "ample evidence to show that Petitioner's actions played a significant role in Nunley's death by asphyxiation." (Doc. 11 at 18.)

#### A. Standard of Review for Insufficient Evidence Claims.

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition

6

must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

### B. State Court of Appeal Opinion

The Court of Appeal rejected Petitioner's argument on appeal that the record did not contain sufficient evidence that Petitioner's actions were the proximate cause of Nunley's death. *People v. Larrea, et al.*, (No. F06331) (Cal. Ct. App. Nov. 14, 2014) at 5. Petitioner specifically argued that the trial testimony of the forensic pathologist failed to show that the assault on Nunley was a substantial factor in his death.

The forensic pathologist, Lesley Wallis-Butler, M.D. ("Dr. Wallis-Butler"), testified that based on the written statement of emergency personnel and photos of Nunley's body at the scene, she could make the following "pathological diagnoses": (1) positional asphyxia; (2) blunt force trauma, multiple contusions, neck hemorrhage and facial lacerations; (3) arms and legs bound with duct tape; (4) atherosclerotic cardiovascular disease; and (5) methamphetamine intoxication. *Id*. at 6.

Dr. Wallis-Butler defined "'positional asphyxia' as the inability to breathe through the nose or mouth because of the position of the head." Dr. Wallis-Butler diagnosed positional asphyxia because Nunley was found on his side, "with his hands behind his back inhibiting his respiratory muscles, his head wedged between the wall and a space heater, and his nose and mouth pointed toward the floor so that he was not able to move his airway." *Id*. Having one's

7

hands bound behind the back "inhibits breathing by 'locking your ribs into an up position.'" Dr. Wallis-Butler "opined that Nunley was unconscious, either due to partial strangulation or methamphetamine intoxication, and then, because of the position he was in, not able to clear his nose and mouth." *Id*.

> Although Dr. Wallis-Butler
>
> could not say how much each of the contributing factors played in Nunley's death, nor which was the primary factor, [Dr. Wallis-Butler] concluded his death was a homicide caused by 'positional asphyxia associated with the blunt-force trauma and the extremity binding, along with the contributory factor of the methamphetamine intoxication.

*Id*.

Petitioner was charged with murder based on the felony murder doctrine, which "provides a killing is first degree murder if 'committed in the perpetration' of certain enumerated felonies, including robbery.'" *Id*. at 7 (citing Cal. Penal Code § 189). "The requisite mental state is 'simply the specific intent to commit the underlying felony' because only felonies that are inherently dangerous to life or pose a significant prospect of violence are listed in section 189." *Id*. (citing *People v. Cavitt*, 33 Cal. 4th 187, 197 (2004)).

A conviction for first degree felony murder does not require proof of a strict causal relationship between the felony and the homicide, "so long as the killing and the felony are part of one continuous transaction." *Id*. (internal citations omitted). However, a homicide conviction requires proof that the defendant's conduct proximately caused the victim's death. *Id*. at 8 (citing *People v. Butler*, 187 Cal. App. 4th 998, 1009 (2010)). As noted by the Court of Appeal,

> [t]o be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical. As long as the jury finds that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death. . . .
>
> A jury's finding of proximate causation will not be disturbed on appeal if there is substantial evidence – evidence that is reasonable, credible, and of solid value –

8

> from which it may be reasonably inferred that the defendant's act was a substantial factor in producing the death. On appeal, we do not reweigh the evidence or determine credibility issues; if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of judgment.

*Id*. (internal citations and quotation marks omitted).

The Court of Appeal found that although Dr. Wallis-Butler "was unable to attribute a percentage value to each contributing factor, it did not preclude the jury from reasonably inferring that the acts of hitting Nunley, choking him, binding him, and placing him on his side played a substantial role in his death." *Id*. at 10. So long as "the jury finds that without the criminal act the death would not have occurred when it did, [the jury] need not determine which of the concurrent causes was the principal or primary cause of death." *Id*. (internal citation omitted).

The Court of Appeal determined that there was sufficient evidence from which the jury could infer that Petitioner's actions were a substantial factor in contributing to Nunley's death and rejected Petitioner's claim.

### C. **Denial of Petitioner's Insufficient Evidence Argument Was Not Objectively Unreasonable**

Petitioner maintains that the evidence presented at trial was insufficient to prove that his actions were a substantial factor in Nunley's death. (Doc. 6 at 17). Petitioner alleges that Dr. Wallis-Butler was unable to determine that Petitioner's actions constituted a substantial factor in causing Nunley's death. *Id*.

Petitioner is asking this Court to reweigh the evidence in his favor. However, on habeas review, this Court does not reweigh the evidence presented at trial. Instead, the Court must review the record to determine whether a rational trier of fact could have found Petitioner's actions were a substantial factor in Nunley's death. *Jackson*, 443 U.S. at 319.

//

Here, the evidence showed that after entering Nunley's house, Petitioner and his associates hit Nunley, choked him, bound his arms behind his back, bound his legs, and placed him on his side, wedged against a wall. Although Dr. Wallis-Butler could not say how much each of the contributing factors she identified[4] played a role in Nunley's death, Dr. Wallis-Butler determined that his death was homicide caused by "positional asphyxia associated with the blunt-force trauma and the extremity binding, along with the contributory factor of the methamphetamine intoxication." *Larrea*, (No. F06331) at 6.

Evidence is considered in the light most favorable to the prosecution, and it is assumed that the jury weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. Based on this standard, the Court cannot say it was unreasonable for the Court of Appeal to find that without the actions of Petitioner, Nunley would not have died.

The Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. For these reasons, the Court denies Petitioner's claim that there was insufficient evidence to support a finding that Petitioner's actions were a substantial factor in Nunley's death.

### IV. The State Court Did Not Err in Rejecting Petitioner's Felony-Murder Special Circumstance Claim

Petitioner was charged with felony murder and as a special circumstance, it was alleged that the murder was committed in the commission of a robbery. Under California law, "[a]ll murder which is . . . committed in the perpetration of, or attempt to perpetrate . . . robbery . . . is murder of the first degree." Cal. Penal Code §189. The Felony-murder special circumstance

---

[4] The factors included: 1) positional asphyxia; (2) blunt force trauma, multiple contusions, neck hemorrhage and facial lacerations; (3) arms and legs bound with duct tape; (4) atherosclerotic cardiovascular disease; and (5) methamphetamine intoxication. *Larrea*, (Nos. F06331) at 6.

defines murder as, "committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit . . . robbery." Cal. Penal Code § 190.2(a)(17)(A).

In his second ground for habeas relief, Petitioner alleges that his sentence of life imprisonment without the possibility of parole violates the Eight Amendment guarantee against cruel and unusual punishment, because his sentence was based on a special circumstance, felony murder, that did not suitably narrow the class of persons who could receive life without the possibility of parole. (Doc. 6 at 20-21.) Specifically, Petitioner argues "[t]he elements of felony murder and felony-murder special circumstance are defined in virtually identical terms," which, according to Petitioner, is unconstitutional. *Id*. at 21. In other words, Petitioner argues his sentence was unconstitutional because the sentence for felony murder and felony-murder special circumstance is the same: life imprisonment without the possibility of parole. Petitioner argues this is unconstitutional because the special circumstance, which increases the severity of a sentence, is required to narrow the class of individuals who are eligible for an increased sentence.

Respondent counters that because the Supreme Court has never issued a decision on this issue, the California Court of Appeal's decision cannot contravene clearly established federal law. (Doc. 11 at 20).

**A. Standard of Review for Special Circumstance Claims**

The Eight Amendment forbids cruel and unusual punishment, and contains a "'narrow proportionality principle' that 'applies to noncapital cases.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991)). That is, "the Eight Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Id*. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)) (internal quotation marks omitted).

The Supreme Court has held that an aggravating circumstance, which increases the severity of the sentence, "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). To comply with the Eight Amendment, most states have capital sentencing laws that require juries to find at least one aggravating circumstance to impose the death penalty. *Lowenfield v. Phelps*, 484 U.S. 231, 244-45 (1988) (internal citation omitted). "By doing so, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition." *Id*. (citing *Zant*, 462 U.S. at 878 ("[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty.")).

### B. State Court of Appeal Opinion

The Court of Appeal summarized Petitioner's argument as follows:

> [Petitioner] argue[s] the felony-murder special circumstance is unconstitutional as applied in [his] case because the felony-murder theory of first degree murder was based on the same facts as the robbery special circumstance; the one elevates the degree of homicide to first degree murder and the other renders them eligible for life imprisonment without parole ([Cal. Penal Code] §§ 189, 190, subd. (a), 190.2, subd. (a)(17)(A)). As such, there is no "meaningful distinction between the felony-murder special circumstance and the felony-murder theory of first-degree murder," violating the Eight Amendment.

*Larrea*, (Nos. F06331) at 18.

The Court of Appeal noted that aggravating circumstances must narrow the class of persons eligible for the death penalty and justify the imposition of a more severe sentence. *Id*. at 19 (citing *Zant*, 462 U.S. at 877). In California, "[t]he same rule applies to the sentence of life imprisonment without parole based on the special circumstance law." *Id*. (citing *People v. Estrada*, 11 Cal. 4th 568, 575-76 (1995)). This narrowing function limits the sentence of death or life imprisonment without parole to a subclass of murders; here, the applicable special

12

circumstance is the felony-murder special circumstance for robbery. *Id*. (citing Cal. Penal Code § 190.2(a)(17)).[5]

Before the Court of Appeal, as in this Court, Petitioner argued that "use of the same felony-murder facts to establish both first degree murder and the robbery-murder special circumstance resulted in a denial of the constitutionally required narrowing of the class." *Id*. However, the Court of Appeal noted that the California Supreme Court has repeatedly rejected this exact challenge and upheld the felony-murder special circumstance.[6] Because the decisions of the California Supreme Court are binding upon the Court of Appeal, the Court of Appeal rejected Petitioner's claim.

### C. Denial of Petitioner's Special Circumstance Claim Was Not Objectively Unreasonable

Petitioner argues that charging him with first degree murder and the felony-murder special circumstance was unconstitutional because although the felony-murder special circumstance is an aggravating factor, it does not narrow the class of persons eligible for life imprisonment without the possibility of parole. (Doc. 6 at 20-21).

In rejecting Petitioner's claim, the Court of Appeal properly cited the holding in cases before the United States Supreme Court. *Larrea*, (Nos. F06331) at 19 (citing *Zant*, 462 U.S. 862; *Lowenfield*, 484 U.S. 231). A state court decision that correctly identifies the controlling federal legal authority and applies it correctly in rejecting a claim is not contrary to United States

---

[5] California Penal Code § 190.2(a) states:

> The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found . . . to be true:
>
> (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit . . . (A) robbery.

[6] The California Supreme Court held "the fact that the aggravating circumstance duplicated one of the elements of the crime does not make [the] sentence constitutionally infirm." *People v. Millwee*, 18 Cal. 4th 96, 164 (1998) (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988)).

13

Supreme Court law. *Williams v. Taylor*, 529 U.S. 362, 406 (2000) ("[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause.").

Nor does the decision involve an unreasonable application of clearly established United States Supreme Court precedent. In *Lowenfield*, the petitioner was convicted of first degree murder, where he had the specific intent to kill or to inflict great bodily harm upon more than one person. *Lowenfield*, 484 U.S. at 243. The jury found an aggravating circumstance in the case, that the petitioner "knowingly created a risk of death or great bodily harm to more than one person." *Id*.

The petitioner in *Lowenfield* argued that "the parallel nature of these provisions requires that his sentences be set aside on a mistaken premise as to the necessary role of aggravating circumstances." *Id*. at 244. The Supreme Court held that

> the narrowing function required for a regime of capital punishment may be provided in either of [ ] two ways: The legislature may itself narrow the definition of capital offenses, . . ., or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.

*Id*. at 246. The Court determined that in the case of *Lowenfield*, "the 'narrowing function' was performed by the jury at the guilt phase when it found" the petitioner guilty of murder under the provision that the offender has a specific intent to kill or to inflict great bodily harm. *Id*. "The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition" to the murder charge "is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm." *Id*.

Here, the Court of Appeal's rejection of Petitioner's claim that the felony murder special circumstance does not appropriately narrow the class of people subject to a life imprisonment

14

without parole term, is not inconsistent with the holding of *Lowenfield*. Indeed, the jury performed the "narrowing function" by finding that Petitioner killed Nunley in the course of a robbery. The fact that they then found the felony murder aggravating circumstance in addition to the murder charge does not make the sentence "constitutionally infirm." *Id*. Consequently, the Court will deny Petitioner's claim.

## V. The Court Declines to Hold an Evidentiary Hearing

Petitioner requests the Court hold an evidentiary hearing. In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176. Here, all of Petitioner's claims can be resolved by reference to the state court record. Accordingly, the Court will deny Petitioner's request for an evidentiary hearing.

## VI. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>>
>> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>>
>> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VII. Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated: **April 16, 2018**                /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE